THE STATE ex rel. WILLIAM B. SULLIVAN et al. v. REYNOLDS, Judge.

In Banc, January 27, 1908.

1. **RECEIVER: In Custodia Legis.** The possession of property taken by a receiver, in pursuance of an order of court appointing him receiver, is the possession of the court. And such property is *in custodia legis.*

2. ———: ———: **Subsequent Suit for Receiver.** Suit had been brought against relator and a company in whose name he did business, in the circuit court of St. Louis county, having for its object the winding up of the affairs of the company and the distribution of its assets among its creditors, and said court

209 Sup.—11

had jurisdiction of the parties and subject-matter. It enjoined relator and the company from further prosecuting the business of the company, and appointed a receiver and directed him to take charge of its assets and administer them under the orders of the court, and the receiver duly qualified, entered upon the discharge of his duties and as such took possession of the properties of the company. *Held*, that the properties were thereafter *in custodia legis*, and no other court of concurrent jurisdiction had authority to oust it of its jurisdiction, and hence the circuit court of the city of St. Louis could not, when these facts in the proper way were once called to its attention, proceed to try a subsequent suit, brought by other creditors against the same defendants and also the receiver, and asking that the court appoint a receiver for said company, and compel it and the previously appointed receiver to render an accounting to him and the court for the assets of said company.

3. ———: ———: ———: **Change of Receiver.** Nor does the fact that the circuit court of St. Louis county, after it had appointed a receiver, removed him and appointed the Supervisor of Building and Loan Associations receiver, in any wise affect its jurisdiction or render his possession of the properties any the less *in custodia legis.* The court has legal right to remove a receiver and appoint another, and the legal custody of the property is not disturbed thereby.

4. ———: ———: ———: **Appeal.** The granting of an appeal from the order appointing the Supervisor of Building and Loan Associations receiver in place of the one removed, whether or not the court properly construed the statute as requiring that officer to be appointed receiver, did not remove him as receiver or release the property from the custody of the law.

5. ———: ———: ———: ———: **Bond: Subsequent Order to Receiver to Release Property.** Nor did the fact that, after the trial court had allowed an appeal from an order appointing the Supervisor of Building and Loan Associations receiver, the appellant filed a bond that was approved and thereupon the court made an order directing the receiver to turn over all the property to the appellant, which the receiver refused to obey, remove said supervisor as receiver or release the property from the custody of the law, for the trial court had no authority to make such last order at a subsequent term, after final judgment. The effect of the appeal at a subsequent term and the giving of bond is not such as to warrant the court in making an order against the receiver to turn over the property and money in his hands.

6. ——: **Application in Another Court.** Where a court of competent jurisdiction has appointed a receiver, who is in possession of and administering the property under its orders, another court of coordinate jurisdiction will not entertain a bill to administer the same property and to take it from the possession of the former receiver and to appoint its own receiver.

7. ——: ——: **Prohibition.** And the Supreme Court will by its writ of prohibition prohibit the other court of coordinate jurisdiction from entertaining such suit.

8. **PROHIBITION: Interfering With Another Court's Jurisdiction.** The writ of prohibition is the proper remedy to prohibit a circuit court from intermeddling or entertaining a suit the subject-matter of which is already in process of litigation in another court of coordinate jurisdiction which has jurisdiction both of the subject-matter and parties.

## Prohibition.

PEREMPTORY WRIT AWARDED.

*Thos. C. Hennings* and *Robt. F. Walker* for relators.

(1) This is a proper case for prohibition; the object of the writ being to restrain respondent, as judge of a circuit court, from further proceeding therein for want of jurisdiction, in the court, to entertain and try the cause; and the writ will issue equally where the inferior court exceeds or undertakes to exceed its jurisdiction in a cause of which it may take cognizance, no less than in cases where it has no jurisdiction whatever. Morris v. Lenox, 8 Mo. 252; State ex rel. v. Lewis, 76 Mo. 370; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Withrow, 133 Mo. 500; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Scarritt, 128 Mo. 331; High on Ex. Leg. Rem., sec. 789; Spelling on Ex. Relief, sec. 1741. (2) The petition for the writ was filed in time. State ex rel. v. Rombauer, 105 Mo. 103; State v. Elkin, 130 Mo. 90; 16 Ency. Pl. and Pr., 1133. (3) The appearance of relator in the proceedings sought to be stayed by the writ, by

filing his return to the order to show cause, did not operate to waive the lack of jurisdiction. R. S. 1899, sec. 602; Baker v. Railroad, 36 Mo. 543; Bray v. Marshall, 66 Mo. 122; Kinealy v. Stead, 55 Mo. App. 182; Christian v. Williamson, 35 Mo. App. 297. (4) Respondent cannot entertain jurisdiction of the proceeding sought to be stayed because, although the case falls within a class of cases (i. e., receivership proceedings) of which his court may take cognizance, the subject-matter of the suit (i. e., the *res,* the property of relator) was already, when the proceeding was instituted, and still is, in the custody, possession and under the control of another court of competent and concurrent jurisdiction, the circuit court of St. Louis county, through its officer, the receiver duly appointed. Mishawaka Woolen Mfg. Co. v. Powell, 98 Mo. App. 530; McFarlan Carriage Co. v. Wells, 99 Mo. App. 641; Green v. Tittman, 124 Mo. 372; Railroad v. Sweet, 10 Mo. App. 276. The property being held by the receiver as such, is held under judicial process, and cannot be taken under other process of another court. Bank v. Owen, 79 Mo. 429; Metzner v. Graham, 57 Mo. 404; Colburn v. Yantis, 176 Mo. 670; Hudson v. Lamar, 74 Mo. App. 238; Bredell v. Fair Grounds, 95 Mo. App. 676. (5) The property being in the custody of the circuit court of St. Louis county, through its receiver, no one, not even one claiming under title paramount to any of the parties litigant, will be allowed to interfere with the property, even by judicial process; but all claimants thereto will be required to submit their claims to that court for adjudication and abide its determination with reference to the disposition of the property. Metzner v. Graham, 57 Mo. 404; Turner v. Railroad, 74 Mo. 602; Heath v. Railroad, 83 Mo. 617; Colburn v. Yantis, 176 Mo. 670; Luley v. Schulenberg, 13 Mo. App. 595; State v. Netterton, 26 Mo. App. 414; Wade v. Ringo, 62 Mo. App. 414;

Bank v. Bank, 136 U. S. 236; Railroad v. Humphreys, 145 U. S. 97; Kerr on Receivers (2 Am. Ed.), chap. 6; Bispham's Principles of Equity, secs. 579, 580. (6) Actual possession of property in controversy is not necessary to confer complete power on a court of competent jurisdiction, to exercise its authority in determining and finally disposing of the case before it, to the exclusion of any other tribunal. Bank v. Stephens, 169 U. S. 432; Adams v. Trust Co., 15 C. C. A. 1; Deming v. Marble Co., 12 Abb. Prac. 66.

*Claud D. Hall* for respondent.

(1) When defendant Sullivan appeared and filed his "return to restraining order and answer," he waived the question of jurisdiction. Bankers' Life Association v. Shelton, 84 Mo. App. 630. (2) The fact that the suit of Wehrs v. Sullivan was pending in the circuit court of St. Louis county and is pending on appeal in this court, does not authorize the restraining of this suit by prohibition. In re Alix, 166 U. S. 136; Roper v. Cady, 4 Mo. App. 593; State ex rel. v. Withrow, 108 Mo. 1. (3) Relator should have sought his redress in the circuit court of the city of St. Louis. 23 Am. and Eng. Ency. Law (2 Ed.), 213 and note; State ex rel. v. Gill, 137 Mo. 681; State ex rel. v. Laughlin, 9 Mo. App. 486; Barnes v. Gottschalk, 3 Mo. App. 111. (4) A writ of prohibition will not lie while the preliminary objection in the inferior court remains undetermined. The reason is that it cannot be assumed that the lower court will pronounce an erroneous judgment. Bankers' Life Association v. Shelton, 84 Mo. App. 634; Schubach v. McDonald, 179 Mo. 183; 23 Am. and Eng. Ency. Law (2 Ed.), 214 and note; State ex rel. v. Scarritt, 128 Mo. 338; State ex rel. v. Sale, 188 Mo. 495; State ex rel. v. Stobie, 194 Mo. 50; Railroad v. Sweet, 103 Mo. App. 280; Eckerle v. Wood, 95 Mo. App. 386; Coleman v. Dalton, 71 Mo. App. 24. (5) If the facts set forth in the petition authorize the court to take any action what-

ever, prohibition will not lie. State v. District Court, 56 Pac. 224; State ex rel. v. Wood, 155 Mo. 470; Schubach v. McDonald, 179 Mo. 182; Forsee v. Gates, 89 Mo. App. 584; State ex rel. v. Burckhart, 87 Mo. 538. (6) Writ of prohibition will not be used to serve the purpose of a writ of error, or an appeal, especially when these remedies are adequate. Eckerle v. Wood, 95 Mo. App. 386; State ex rel. v. Ross, 136 Mo. 259; Bankers' Life v. Shelton, 84 Mo. App. 634; State ex rel. v. Scarritt, 128 Mo. 338; State ex rel. v. Evans, 182 Mo. 641. (7) If the court has authority over that class of cases, prohibition will not lie. Eckerle v. Wood, 95 Mo. App. 386; Murphy v. Superior Court, 84 Cal. 310; Coleman v. Dalton, 71 Mo. App. 14; Talboy, C. & Co. v. Dist. Court, 33 Colo. 441; People v. Dist. Court, 29 Colo. 1; State v. Neal, 30 Wash. 702; State ex rel. v. Ross, 136 Mo. 259. (8) The pendency of the suit of Wehrs v. Sullivan does not prevent respondent judge from proceeding with the suit restrained by the rule of prohibition herein. State ex rel. v. Withrow, 108 Mo. 1; State ex rel. v. Ross, 136 Mo. 259; Rodney v. Gibbs, 184 Mo. 1; Smith v. Lathrop, 84 Am. Dec. 453; Liggett v. Glenn, 51 Fed. 389. (9) The assets in the hands of Watkins, after the appeal was taken and *supersedeas* bond given and approved, and the order made to restore the assets to the defendant Sullivan, were subject to seizure, and not *in custodia legis.* Very v. Watkins, 23 How. 469; High on Receivers, sec. 162; Andrews v. Smith, 5 Fed. 833; U. S. v. Towns, 7 Ben. Dist. Rep. 444; Shinn on Attachments, secs. 304, 326; Buck v. Colbath, 3 Wall. 334; Halliday Case, 27 Fed. 838; State ex rel. v. Hirzell, 137 Mo. 435, and the following cases cited in that opinion, namely: Everett v. State, 28 Md. 205; Ins. Co. v. Hotel Co., 37 Wis. 580; Buckley v. George, 71 Miss. 580; State ex rel. v. Superior Court, 12 Wash. 677; Shields v. Coleman, 157 U. S. 168; Mohrs v. Langan, 162 Mo. 474; Pomeroy, Eq.

Rem., 327-328; Alderson, Beach on Receivers, 26 and 131; People's Cemetery Assn. v. Oakland Cem. Co., 60 S. W. 679; McPike v. Wells, 54 Miss. 136, in which all the cases are cited and explained; Algrem et al. v. Sullivan et al., decided by U. S. Circuit Court, 8th Circuit, Eastern District of Missouri, July 3, 1907.

WOODSON, J.--This is an original proceeding instituted in this court, seeking to prohibit the respondent, as judge of the circuit court of the city of St. Louis, from taking and further exercising jurisdiction over the parties to, and the subject-matter involved in, the case of Louis F. Algrem et al. vs. William B. Sullivan et al., pending in the circuit court of said city.

The facts in the case are not disputed, and are substantially as follows, as disclosed by the petition for the preliminary writ and the return thereto of the respondent, to-wit:

At the May term, 1905, of the circuit court of St. Louis county, Missouri, one Herman H. Wehrs filed a petition in said court against William B. Sullivan, doing business as the Home Cooperative Company, asking an injunction and the appointment of a receiver for the assets of said William B. Sullivan, doing business as aforesaid. A receiver, Francis A. Tillman, was appointed, gave bond, took charge of the property of said company, and begun to administer and settle its business. At the September term, 1905, the said circuit court entered a final judgment in said cause, making the injunction permanent and confirming the appointment of the receiver, Tillman.

At the subsequent term of said circuit court an order was entered of record requiring said William B. Sullivan and the contract-holders and creditors of said Home Cooperative Company for which Tillman had been appointed receiver, to appear before the court on April 7, 1906, and show cause why the judgment or de-

cree in said cause making the injunction permanent and confirming the appointing of Tillman as receiver of said company should not be vacated and set aside. On April 7, 1906, the order to show cause was continued until April 11, 1906; on this day one William L. Watkins, Supervisor of Building & Loan Associations of the State of Missouri, filed what he termed an interplea, asking the court to vacate and set aside the judgment or decree heretofore rendered in this cause, to remove Tillman as receiver and to appoint him, Watkins, as receiver under the alleged authority of a statute of Missouri, approved April 21, 1903. [Laws 1903, pp. 110-113.]

The court at a subsequent term (April 21, 1906) made an order setting aside and vacating its judgment and decree entered at a former term confirming the appointment of said Tillman as receiver, removed the latter, and entered an interlocutory order appointing William L. Watkins, as supervisor of Building and Loan Associations, receiver of said Home Cooperative Company. An order was entered requiring said Tillman to turn over all the assets of said company to Watkins, which was done, and Watkins as supervisor and receiver took charge of the assets and representatives of value of said company. William B. Sullivan thereupon filed a motion to set aside the interlocutory order appointing said Watkins, as supervisor, receiver of said Home Cooperative Company, which was by the court overruled, exceptions were saved thereto and an affidavit for appeal to the Supreme Court filed, which was by the trial court denied. Said Sullivan thereupon applied for and was granted a writ of mandamus on said trial judge, requiring him to grant an appeal from his refusal to vacate and set aside the interlocutory order appointing said Watkins, as supervisor, receiver of said Home Cooperative Company. For his return to said writ of mandamus the trial judge

granted said appeal and the same was perfected and is
now pending and undetermined in this court.    Upon
the granting of this appeal William B. Sullivan, the
appellant, entered into a bond in the sum of $20,000,
which was approved by the trial court, and the assets
of said company ordered to be turned over to him or to
his attorney, Thos. C. Hennings, which was not done,
but said Watkins continued in possession of said as-
sets, still has possession of same and has not delivered
or surrendered said assets or any part of same to said
William B. Sullivan or his attorney.

Subsequently, at the April term, 1907, of the cir-
cuit court of the city of St. Louis, in which Hon. Matt
G. Reynolds was presiding as judge, Louis F. Algrem
et al. filed a petition in said circuit court against Wil-
liam B. Sullivan, doing business as the Home Coopera-
tive Company and William L. Watkins as receiv-
er of the said Home Cooperative Company, and
asked in said petition, among other things, that
the court appoint a receiver for the said Home
Cooperative Company, alleging that they, the
plaintiffs, were contract-holders and interested in the
distribution of its assets.    The nature and purpose of
this proceeding in the circuit court of the city of St.
Louis was to require William B. Sullivan as the Home
Cooperative Company nominally, and William L. Wat-
kins actually, as receiver, to render an accounting to
said circuit court of the assets of said Home Coopera-
tive Company then in his possession as such receiver,
and to have said circuit court appoint a receiver for
said assets and to restrain and enjoin said Sullivan and
said Watkins as receiver from transferring or in any
way controlling or disposing of said assets, and that
said circuit court assume, through its own receiver,
the custody, control and final distribution of the assets
of said company.    The said petition by Algrem et al.
in the circuit court of the city of St. Louis also set

forth the fact that a receiver had theretofore been appointed for the assets of the said Home Cooperative Company in the circuit court of St. Louis county, and that an appeal had been taken in said case to the Supreme Court, where same was then pending and undetermined.

The said circuit court of the city of St. Louis, in which respondent was then and there presiding as judge, upon the filing of said petition, issued therein a restraining order restraining and enjoining William B. Sullivan and William L. Watkins as receiver and their servants and agents from disposing of or transferring any of the assets of said Home Cooperative Company until the further orders of the court, and further ordered that said Sullivan and said Watkins as receiver be and appear before said court on May 6, 1907, and show cause why a receiver should not be appointed for said Home Cooperative Company and why a temporary injunction should not be granted against said defendants restraining and enjoining them from disposing of or transferring the assets of the said Home Cooperative Company. On the said 6th day of May, 1907, the said circuit court permitted said plaintiffs to file an amended petition in said cause, setting forth the same cause of action, asking the appointment of a receiver for said assets and such other relief as had been asked in said original petition, but in addition thereto setting forth the forms of contract used by said Home Cooperative Company when same was engaged in business, and adding the names of two defendants who are not alleged to hold or control any of said assets. Thereafter, on the said 6th day of May, 1907, the said Sullivan and Watkins, through their counsel, made return to the restraining order issued by and the petition filed in said circuit court of the city of St. Louis, in which they allege as grounds why such

restraining order should be dissolved, and said accounting, injunction and the appointment of a receiver and other relief prayed for in said petition should be denied, the following among other things: that another court of competent and concurrent jurisdiction than the one before which this proceeding is brought, to-wit, the circuit court of St. Louis county, has heretofore, in a proceeding commenced before it, taken possession of the same property of the said Home Cooperative Company sought to be adjudicated in this proceeding, and has appointed William L. Watkins, Supervisor of Building and Loan Associations of the State of Missouri, and one of the defendants herein, receiver for said assets and that he has taken possession and now has the custody of same, and an appeal has been perfected from the motion refusing to vacate the interlocutory order appointing said William L. Watkins receiver to the Supreme Court, where this entire matter is now pending and undetermined, and that the circuit court of the city of St. Louis has no jurisdiction or authority to hear or determine any of the matters or things for which relief is prayed in the petition herein; that the assets of the said Home Cooperative Company are now wholly under the control and subject to the rulings, orders, judgments and decrees of other courts of competent, concurrent and appellate jurisdiction, to-wit, the circuit court of St. Louis county, and the Supreme Court of Missouri, and that the circuit court of the city of St. Louis has no jurisdiction or authority to hear or determine any matter in any manner affecting the custody or control of said assets, and that the control and authority in this matter by other courts of coordinate and appellate jurisdiction are fully set forth and disclosed in the said petition of Louis F. Algrem et al.

On the 9th day of May, 1907, upon a hearing upon said return to the restraining order by the said cir-

cuit court, the Hon. Matt G. Reynolds, presiding therein as judge, no action was taken by the court, whereupon the defendant, William B. Sullivan, filed a motion in said circuit court asking the court to dismiss said suit and alleging the same grounds therein that had been set forth in defendant's return to the restraining order and answer to the petition; that the said circuit court made no ruling or order of record upon said motion to dismiss said cause, but continued to assume jurisdiction in said proceeding, and on the same day ordered summons to be issued in said cause for the two additional defendants named in plaintiffs' amended petition.    Defendant William B. Sullivan, through his counsel, thereupon made application to Hon. L. B. Valliant, one of the judges of this court, for a preliminary writ of prohibition, and upon an inspection of the petition submitted by defendant William B. Sullivan, a preliminary order was made by the Hon. L. B. Valliant, and the Hon. Matt G. Reynolds, judge of the circuit court of the city of St. Louis, was prohibited from further acting in said proceeding and required to show cause to the Supreme Court on May 29, 1907, why he was assuming jurisdiction and exercising authority in the matter of the appointment of a receiver for said Home Cooperative Company, and in the other matters in which relief is prayed in the petition of Louis F. Algrem et al.    Upon the filing of a return to said preliminary order by said respondent, the Hon. Matt. G. Reynolds, the relator W. B. Sullivan filed a motion for a judgment on the pleadings, and the preliminary order was by the Supreme Court continued until the October term, 1907.

I.    The contention of relator is that, when the circuit court of St. Louis county assumed jurisdiction of the case of Wehrs v. Sullivan et al., and appointed Tillman receiver, who, as such, took charge of the as-

sets of the company, no other court of concurrent jurisdiction had the authority to oust it of its jurisdiction over the cause or to interfere with the assets of the company in any manner, for the reason that they were *in custodia legis*.    They also contend that this result is not changed by the fact that the circuit court of St. Louis county subsequently removed the receiver, Tillman, and appointed another in his stead, nor by the fact that the latter proceeding was questioned by Sullivan, which resulted in an appeal of that case to this court.

The record in this case discloses that the case of Wehrs v. Sullivan et al. was a proceeding in the nature of a proceeding *in rem*, instituted in the circuit court of St. Louis county, having for its object and purpose the winding up of the affairs of the Home Cooperative Company and the distribution of the assets thereof among its creditors, as provided by law.    That said court had jurisdiction of the parties and the subject-matter of said cause is not questioned by respondent.    In due form and in conformity with the law of the land, said court enjoined Sullivan and the company from further prosecuting the business, and appointed a receiver to take charge of the assets of the company and ordered him to hold and administer them under the orders and direction of the court.    In pursuance to this order the receiver duly qualified and entered upon the discharge of his duties, as such, and reduced to possession the assets of the company.    That possession was the same as the possession of the court, for the reason that the receiver is an arm or officer of the court which appointed him, and whatever he does under the order of the court regarding the property involved is the act of the court.    [High on Receivers (3 Ed.), sec. 134; Ex parte Haley, 99 Mo. 150; Colburn v. Yantis, 176 Mo. 670; Robinson v. Railroad, 66 Pa. St. 160; Skinner v. Maxwell, 68 N. C. 400;

DeVisser v. Blackstone, 6 Blatchf. 235; Mays v. Rose, Freeman's Ch. (Miss.) 703; Day v. Postal Telegraph Co., 66 Md. 354; Angel v. Smith, 9 Ves. Ch. 335; In re Butler's Estate, 13 Irish Ch. 456.]

Clearly, under the facts of this case and according to the law enunciated by the above authorities, the assets of the Home Cooperative Company were *in custodia legis* on April 11th, 1906, the day on which Watkins, the Supervisor of Building & Loan Associations, filed his bill in the nature of an interplea, asking the court to vacate and set aside the judgment and decree theretofore rendered appointing Tillman receiver, and asking that he be appointed receiver under the Act of 1903, pp. 110-113.

The legal custody of the property was not disturbed or changed by the order of the court made at a subsequent term removing Tillman as such receiver and appointing Watkins in his stead.   [Very v. Watkins, 23 How. (U. S.) 469; Shields v. Coleman, 157 U. S. 178-179.]   That order of the court was but the removal of one receiver and the appointment of another in his stead, which the court had a perfect legal right to do.   [High on Receivers (3 Ed.), sec. 821.]

Thus far there seems to be no special difference between the relators and the respondent, but the point of their legal divergence begins where the circuit court of St. Louis county granted an appeal from its order refusing to set aside its order appointing Watkins, Supervisor of Building & Loan Associations, receiver of the Home Cooperative Company, and ordering him to turn the assets of the company back to Sullivan.   The respondent contends that the legal effect of that order was to *ipso facto* release said property and assets from the custody and control of the St. Louis County Circuit Court, and thereby subjected them to seizure and liable to be taken in custody by a receiver to be appointed by the circuit court of the city of St. Louis

in the case of Algrem et al. v. Sullivan, which has jurisdiction of that class of cases to which the one at bar belongs.

This contention of respondent is denied by relators, and they assign two reasons why it is not tenable:

FIRST. That the granting of the appeal from the order refusing to set aside the appointment of Watkins did not remove him as receiver of the assets of said company.

SECOND. That the granting of the appeal from said order and approving the appeal bond after the lapse of the term at which final decree was rendered did not warrant that court in making the order to turn the assets of the company over to Sullivan.

We will briefly discuss those two points in the order presented.

As to the first, the return shows that Sullivan filed a motion to set aside and vacate the order appointing Watkins receiver of the assets of the Home Cooperative Company, which was by the court overruled, from which order of refusal Sullivan appealed to this court. Instead of this order having the effect of removing Watkins from the receivership of the Home Cooperative Company it states expressly in so many words that the court refused to remove Watkins, and it was from that order Sullivan appealed. If the order removed Watkins, then what was the sense in Sullivan's appeal from the order? He would be asking this court to do for him that which the court below has already done for him. So, it is thus seen that Watkins is still receiver of those assets, and whether rightfully or wrongfully is wholly immaterial in this case, but that phase of the case will receive due consideration when we reach that question on the appeal.

And as to the second point suggested, it seems to

be settled that the granting of the appeal and approving the appeal bond by the court did not warrant the court in ordering the receiver to turn the assets of the company back to Sullivan.      In discussing this question Mr. High says:      "After the title to property has become vested in a receiver, by virtue of the order appointing him, it cannot be divested merely upon the order of the court made in a proceeding to which he was not a party.  And where, pending litigation, property is in the hands of a receiver who is vested with the usual powers of such officers, and the defendants to the litigation pray an appeal from the final decree of the court below, the effect of the appeal and giving bond thereon is not such as to warrant the court in granting an order against the receiver to turn over the property and money in his hands, and he will still be allowed to retain possession, notwithstanding the appeal."      [High on Receivers (3 Ed.), sec. 161; Schenk v. Peay, 1 Dill. 267.]

While the rule above stated may be some broader than the law as declared in the case of State ex rel. v. Hirzel, 137 Mo. 435; but, however that may be, that law is applicable when the appeal is not taken until after the term of the court has expired at which the final decree was rendered; then, *a fortiori,* it should apply where the order is only substituting one receiver for another, and especially where the final decree of the court is not questioned by the appeal.

If the circuit court of St. Louis county had made in express terms an order at a subsequent term setting aside the final decree granting the injunction and ordering the receiver appointed, it would have been absolutely void and of no effect, because that court had no authority to make such order after the expiration of the term at which the decree was made. And there is nothing in the Hirzel case, supra, which indi-

cated anything to the contrary. [State ex rel. v. Walls, 113 Mo. 42; Appo v. People, 20 N. Y. 531.]

In the former case the judge of the court which tried the case, after overruling the motion for a new trial, died, but before signing the bill of exceptions. His successor in office attempted at a subsequent term of the court to set aside the judgment and grant a new trial. In that case this court held that prohibition would lie to prevent the successor in office from setting aside the judgment previously entered for want of *jurisdiction* in the court to make the order. The decision was not based upon the ground that the matter involved had been adjudicated and could not on that account be again litigated, but was based squarely upon the ground that the *court had no jurisdiction* to make the order.

The same proposition was involved in the Appo case, supra, and it was there contended that when the inferior court or tribunal has jurisdiction of the action or of the subject-matter before it, any error in the exercise of that jurisdiction can neither be corrected nor prevented by a writ of prohibition. In the discussion of that proposition the Court of Appeal of New York said: "It is true that the most frequent occasions for the use of the writ are where a subordinate tribunal assumes to entertain some cause or proceeding over which it has no control. But the necessity for the writ is the same where, in a matter of which such tribunal has jurisdiction, it goes beyond its legitimate powers; and the authorities show that the writ is equally applicable to such a case. . . . These cases prove that the writ lies to prevent the exercise of any unauthorized power, in a case or proceeding of which the subordinate tribunal has jurisdiction, no less than when the entire cause is without its jurisdiction. The broad remedial nature of

209 Sup—12

this writ is shown by the brief statement of a case by Fitzherbert.    In stating the various cases in which the writ will lie, he says: 'And if a man be sued in the spiritual court, and the judges there will not grant unto the defendant the copy of the libel, then he shall have a prohibition directed unto them for a surcease,' etc., until they have delivered the copy of the libel, according to the statute made Anno, 2 H., 5 (F. N. B. title Prohibition).    This shows that the writ was never governed by any narrow technical rules, but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals.    The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed.    I have no hesitation, therefore, in holding that this was a proper case for the use of the writ.''    [Appo v. People, 20 N. Y. l. c. 541-2.]

And the same conclusions have been reached by this court in the following cases:    Morris v. Lenox, 8 Mo. 252; Railroad v. Wear, 135 Mo. l. c. 256; State ex rel. v. Scarritt, 128 Mo. l. c. 338-9; High on Ex. Legal Rem., sec. 789; Spelling on Ex. Legal Rem., sec. 1741.

Should it later turn out that Tillman was improperly removed, and that Watkins was improperly appointed, then the custody of the property would still be, in contemplation of law, in Tillman; and should it appear that Tillman was properly removed and that Watkins was improperly appointed in his stead, the property would still be *in custodia legis,* and the court could appoint someone else to take charge of and administer it under the directions of the court.

"The subject of the removal or discharge of receivers, although to a considerable degree regarded as

a matter of practice and to be discussed as such, is, nevertheless, deemed of sufficient importance to merit separate treatment.    The power of a court of equity to remove or discharge a receiver whom it has appointed may be regarded as well settled, and it may be exercised at any stage of the litigation.    Indeed, it would seem to be a necessary adjunct of the power of appointment, and to be exercised as an incident to or consequence of that power; the authority to call such officer into being necessarily implying the authority to terminate his functions when their exercise is no longer necessary, or to remove the incumbent for an abuse of those functions, or for other cause." [High on Receivers (3 Ed.), sec. 820; In re Colvin, 3 Md. Ch. 300; Siney v. Stage Co., 28 How. Pr. 481; First National Bank v. Barnum Wire & Iron Works, 58 Mich. 315.]

And it is equally well settled that the court in its sound discretion may remove the incumbent and substitute another in his stead.    [High on Receivers (3 Ed.), sec. 822; Siney v. Stage Co., 28 How. Pr. 481; Railroad v. Soutter, 154 U. S. 540; Crawford v. Ross, 39 Ga. 44.]

II.  Having thus shown and decided that the property and assets of the Home Cooperative Company are still *in gremio legis,* it now devolves upon us to determine whether or not the circuit court of the city of St. Louis has the authority and jurisdiction to restrain and enjoin the receiver appointed by the circuit court of St. Louis county from interfering with the property of the company and from performing other functions as such and to appoint another receiver to take charge of and administer the same assets under its own orders and directions.

This is no novel question to the jurisprudence of this State and country.

Mr. High, in his excellent work on Receivers, in the discussion of this question says: "Indeed, when a court of competent jurisdiction has appointed a receiver, who is in possession of and administering the property under its orders, another court of coordinate jurisdiction will not entertain a bill to administer the same property, and to take it from the possession of the former receiver, and to appoint its own receiver. In such a case the parties aggrieved should seek relief in the court which is already in possession of the property through its receiver. So the prior jurisdiction of a court of equity powers over the subject-matter of the appointment of a receiver, and the pendency of a motion for an injunction and a receiver in such court, exclude the interference of that court in a subsequent suit for the same relief. And the appointment of a receiver in the suit thus subsequently begun will be held inoperative as against the appointment made in the former cause. So if the court first appointing a receiver has jurisdiction, its receiver will not be dispossessed of the property at the suit of a receiver subsequently appointed by a court of coordinate jurisdiction; and this is true, regardless of whether the original appointment was or was not erroneous. And a receiver being an officer of court, and being bound to account to the court appointing him for all funds which he receives in his official capacity, he cannot be compelled by an order of another court to pay over money in his hands as receiver in satisfaction of an execution issued upon a judgment of such other court, since such a procedure would necessarily have the effect of producing a conflict of jurisdiction, and would prevent the receiver from compliance with the obligations of his bond given to the court

appointing him." [High on Receivers (3 Ed.), sec. 48.]

This seems to be the universal holding of the State and the United States courts upon that subject. [Young v. Railroad, 2 Woods 606; Young v. Rollins, 85 N. C. 485; Bonner v. Hearne, 75 Tex. 242; Nelson v. Conner, 6 Rob. (La.) 339; Metzner v. Graham, 57 Mo. 404; Heath v. Railroad, 83 Mo. 617; Colburn v. Yantis, 176 Mo. 670; Mishawaka Mfg. Co. v. Powell, 98 Mo. App. 530; Keegan v. King, 96 Fed. 758; Freeman v. Howe, 24 How. 450; Buck v. Colbath, 3 Wall. 334; White v. Schloerb, 178 U. S. 542; Chicago Union Bank v. Bank of K. C., 136 U. S. 223-236; Railroad v. Humphreys, 145 U. S. 97.]

The difficulty with which the courts meet is not what is the law upon the question, but what is the proper remedy to be applied to such cases when they arise. All the authorities sustain the proposition that when a court of equity acquires jurisdiction of a cause, and appoints a receiver to take charge of the property involved, then no other court of coordinate jurisdiction has any power or authority to interfere or meddle with the property in the hands of the receiver, but must leave the court appointing the receiver untrammeled in its administration of the same, as the law directs. But the question now presented is, in what way or manner is that interference to be prohibited where such court persists in encroachments upon the jurisdiction of the other? The law upon this subject lacks much of being uniform in this country. Some of the courts hold that the remedy is by appeal or writ of error; others by injunction or prohibition against the parties prosecuting the suit; while still others hold that prohibition against the court is the proper remedy.

It would serve no good or useful purpose to review the great number of adjudications upon this ques-

tion, giving the various reasons assigned why one remedy, rather than another, should be resorted to. Especially is this true when the facts of each case largely determine the kind of remedy to be applied thereto.

And since this is a proceeding by prohibition, we will content ourselves with an investigation of the law upon that subject, and then determine whether or not the permanent writ should issue herein.

It would be well to bear in mind that the legitimate scope and purpose of the writ of prohibition is to keep inferior courts within the limits of their own jurisdiction, and to prevent them from encroaching upon the jurisdiction of other tribunals. [High on Ex. Legal Rem. (3 Ed.), sec. 782.]

The authorities heretofore cited, both State and Federal, establish beyond question, that courts of coordinate authority have no power or jurisdiction to encroach upon or intermeddle with the power and authority of each other after one has taken jurisdiction of a case. Whenever the jurisdiction of a court of competent authority takes jurisdiction of a case that fact must of necessity and in the very nature of things exclude the jurisdiction of all other courts over the same case, as well as all the incidents thereto, excepting only such courts as are given appellate and surpervising control over them. The reason for this rule seems to be that when such a court takes jurisdiction of a particular case, with all the incidents thereto, there remains nothing of it to which the jurisdiction of another court can attach—no case, no parties, no subject-matter is left exposed to the authority of the latter court.

The mere fact that the law of the State confers upon the circuit court of the city of St. Louis jurisdiction of that class of cases to which the case at bar belongs in no manner militates against the rule of law above stated, for the reason that it was never the in-

tention of the lawmakers to authorize that court or other courts to assume authority over particular cases, pending in a court of coordinate jurisdiction at the time it or they are asked to move in the matter.

As each cause of action arises, and when suit is brought thereon in a court of competent jurisdiction, it is thereby segregated, as it were, from the general class to which it belonged, and is thereby withdrawn from the authority and jurisdiction of all other courts of coordinate jurisdiction.

This is the plain meaning of the law, and is as much a part of it as if written in the statute prescribing the jurisdiction of such courts, because it has been written that "a thing which is in the intention of the makers of a statute is as much within the statute as if it were within the letter." [Riddick v. Walsh, 15 Mo. l. c. 535; In the Matter of Bomino's Estate, 83 Mo. l. c. 441; Humes v. Railroad, 82 Mo. l. c. 227.]

This question came before the Supreme Court of Michigan upon the following facts. "The relator, in an action instituted by him in the superior court of Detroit, recovered against Scripps a considerable judgment. The superior court is a court of jurisdiction in matters of law and equity coordinate with that of the circuit court of this State, and limited only territorially. After the recovery a motion was made by the defendant for a new trial, which was argued in the superior court and denied. The defendant then removed the case to this court by writ of error, and at the last October term the judgment of the superior court was affirmed. At the present term a motion was made and argued for a rehearing, which was denied. The purpose of these proceedings in this court was, of course, to obtain a new trial. While this was the position of the case, the suit was instituted in the Wayne Circuit Court. The bill alleges misconduct in the jury in the principal suit, and asks to have the judg-

ment canceled because of it. Though not in terms praying for a new trial, the bill manifestly has that for its purpose, and is as much a bill for a new trial as if that had been the relief expressly prayed." After stating the facts as above that great jurist and law-writer, Chief Justice COOLEY, said: "From this statement of facts it will be very evident the circuit judge has made a mistake in assuming jurisdiction of the case and making orders in it. The matter is not one which, under the circumstances, can come under his cognizance; other courts have control of the controversy with all its incidents, and have ample competency to do in respect to it whatever may remain to be done. It is a familiar principle that when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of coordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and while its observation might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which Federal and State courts of coordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's action; and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority." [Maclean v. Wayne Circuit Judge, 52 Mich. l. c. 258-9.] The peremptory writ of prohibition was issued in that case.

The same question came before this court in the case of State ex rel. v. Ross, 122 Mo. 435. In that case the question under consideration was squarely made and quite extensively discussed, fully showing the reasons why the writ should go, but did not order the writ to issue upon the grounds here presented. That opinion was based upon the fact that there was no suit pending in the common pleas court at the time the petition was filed therein asking for the appointment of a receiver; and for that reason this court held that that court had no power or jurisdiction to appoint a receiver, and thereby obviated the necessity of passing directly upon the question as to whether or not prohibition was the proper remedy in this class of cases. But the reasoning of the court is equally applicable to the facts of this case. The following extracts from that opinion will show the views of this court regarding the proper remedy in such cases:

"The relator contends that the common pleas court never acquired jurisdiction to appoint a receiver of said railway company's property, for two reasons: First, because there was not, at the time the judge of said court assumed the authority to make such appointment, nor since has been, an action pending in said court in which a receiver could be appointed; and, second, because at the time said judge assumed authority to make such appointment, a receiver had already been legally appointed in a cause pending in the circuit court of Stoddard county, a court of competent jurisdiction, to make such appointment. . . . The writ of prohibition is a familiar mode of the exercise of this power, and is an appropriate one to restrain the exercise of jurisdiction by a subordinate court over a subject-matter when it has none and is loudly called for when such jurisdiction is asserted against a court that has jurisdiction and is asserting it, and when the officers of each acting under its orders are liable at any

moment to come into physical conflict over the possession of the subject-matter in controversy." [pp. 455 and 464.]

It is wholly immaterial whether the common pleas court had no jurisdiction because no suit was pending at the time the receiver was asked for or because the Stoddard Circuit Court had previously acquired jurisdiction of the case; either or both of those facts would have prevented the jurisdiction of the common pleas court from attaching to the case, or to the subject-matter thereof; and in both cases prohibition was the proper remedy.

A kindred case to the one under discussion and identical in principle came before this court in State ex rel. v. Wear, 129 Mo. 619. In that case the regular elected and qualified judge of the court was disqualified from trying the case, and he called in Judge Riley, a judge from another circuit, to try same. The judge from the other circuit responded to the request and assumed jurisdiction of the same. Subsequently, the regular judge appeared in court and attempted to repossess himself of the jurisdiction. A rule was issed from this court requiring Judge Wear to show cause why a writ of prohibition should not issue. In discussing that question this court in substance said: That when the judge of the other circuit responds to try the cause in which the regular judge is disqualified, jurisdiction of the former attaches from the time of his appearance and continues until the final determination of the cause. It then issued a peremptory writ of prohibition against Judge Wear, preventing him from interfering with the former in the exercise of his duties as such judge.

In the case just mentioned, when Judge Wear became disqualified to try the cause and called in Judge Riley to try it, and when he appeared in court in response to that call, those acts amounted to a change

of venue of the cause from one judge to the other, which completely divested the former of all jurisdiction over the matter and invested the latter with full powers to act in the premises. It was the *lack of power* in Judge Wear to proceed with the cause, and the *jurisdiction* of Judge Riley over the same which caused this court to interfere by way of prohibition.

The same would have been true on principle had the change been from the court instead of from the judge, and the cause had been sent to another circuit. In such case the court granting the change would have lost all jurisdiction over the case, and the one to which it was sent would have become possessed of that jurisdiction as fully and completely as the former had before the change was granted. Had this state of facts existed and had the former court attempted to re-assume jurisdiction of the cause, we presume it will not be contended that the writ would have been improperly issued against such court. And it would be justified upon the same grounds it was granted against the judge in the Wear case, namely, because the former court would have been shorn of all authority over the cause, and it would have been completely transferred to and vested in the latter by the change of venue. And that would have been true notwithstanding the facts that both courts were courts of general jurisdiction and each having jurisdiction over the class of cases to which the one there involved belonged.

If the foregoing reasoning is logical, and the conclusions reached are sound, which, it seems to us, cannot upon principle or authority be questioned, then by what semblance of reason or authority can it be contended that the jurisdiction of the circuit court of St. Louis county over the case of Wehrs v. Sullivan et al., which is complete as to the parties and the subject-matter thereof, can be interfered with or acquired by

the circuit court of the city of St. Louis? The juris-
diction of the parties and the subject-matter of the
cause was as complete and perfect in the St. Louis
County Circuit Court as the jurisdiction of Judge
Riley was over the matters in the Wear case, supra,
or the jurisdiction of the court (in the supposed case)
to which a cause had been sent by change of venue.
It, therefore, seems clear to us that if the jurisdiction
of a court over a cause is divested by a change of
venue and invested in another court of coordinate ju-
risdiction, and that fact deprives the former of all au-
thority to act thereafter in the premises, and that pro-
hibition will lie to prevent it from so acting, then by
parity of reasoning it seems that a similar court with
like authority could not of its own motion, nor upon
petition filed therein, acquire jurisdiction over a cause
of action already pending in another court possessing
like powers and jurisdiction.

In other words, the same reasons laid down by the
authorities for holding that a court so divested of ju-
risdiction over a cause has no authority to retake juris-
diction thereof sustain the contention of the relators,
that a court which has not taken jurisdiction of a par-
ticular case cannot acquire jurisdiction to try or other-
wise intermeddle with that case if pending in another
court of coordinate jurisdiction at the time it attempted
to so take jurisdiction thereof; and this is true even
though it had jurisdiction over the class of cases to
which that one belonged.

It is the *possession of jurisdiction of the court over
the particular case in litigation that segregates and
takes it from the general class of cases to which it
belongs which excludes the jurisdiction of another
court of coordinate jurisdiction from attaching to the
same cause;* and the reason for this is apparent, be-
cause it no longer belonged to the class of cases over
which the latter court has jurisdiction at the time the

second suit was filed therein; it had become extinct or ceased to exist as a cause of action so far as the latter court was concerned, and had become merged, as it were, into an action pending in another court.

The authorities herein cited and the conclusions before reached are in no manner in conflict with the law as enunciated in the case of State ex rel. v. Withrow, 108 Mo. 1.    The facts of that case were these: John M. Glover had been appointed by the probate court of the city of St. Louis administrator of the partnership estate of Glover & Shepley.    On April 24, 1889, he was moved from that office and John R. Shepley was appointed in his stead.    On October 3, 1889, Glover filed a final account of his administration in the probate court.    This was done after requests by Shepley, but no motion was filed by Shepley in the probate court, nor was Glover cited to appear.    Shepley filed exceptions to the account on January 21, 1890, and Glover filed another amended account to which Shepley also filed exceptions.    Shepley thereafter tried to get the probate court to pass on the exceptions, but Judge Woerner declined to do so on the ground that Glover was not before him and he had no jurisdiction over the account unless the statutory method was followed, or Glover would appear and submit himself to the jurisdiction of the court.    During the year 1889 and ever since Glover was living in Colorado.    At the June term, 1890, of the circuit court, Shepley brought suit on the bond of Glover, alleging as breaches:    First, that Glover had failed to account as required by law; second, that he had failed to settle with his successor; third, that he had failed to pay over and deliver to his successor the sum of $86,000 in his hands.    The defendants in said action filed an answer in which they set up, first, a plea to the jurisdiction of the circuit court on said bond; second, a plea that another cause of action was pending in the probate court between the

same parties and involved the same issue.     A trial was had on both pleas and both were adjudged bad. The circuit court then proceeded to try the cause on the merits when the provisional writ of prohibition was issued for the judge thereof to show cause why he should not be prohibited from trying the case.

In that case the probate court had *original and exclusive* jurisdiction to hear and determine the exceptions filed therein to the account of Glover, while the circuit court had original jurisdiction of  an  action against him and his securities for a breach of his administrator's bond.     The courts were not courts of coordinate jurisdiction, not even as to the matters pending therein.     And this court, speaking through GANTT, P. J., in that cause, said:     "Now when we say 'two courts of concurrent jurisdiction,' we must concede that both courts have jurisdiction of the same matter.     For the purposes of this case, it is sufficient to determine that the circuit court of St. Louis had jurisdiction of the action against relators; if it did, then prohibition will not lie, and the fact that it may erroneously decide some of the questions before it will not alter the case."     [State ex rel. v. Withrow, 108 Mo. l. c. 8.]     It is thus seen that the express reason assigned by Judge GANTT for refusing the writ was that the circuit court had jurisdiction of the subject-matter of the cause  therein  pending,  to-wit,  the breaches of the conditions of the administrator's bond. While there may be some statements in that opinion if considered abstractly and not in connection with the facts of that case which might lend color to the respondent's contention in this case, yet when applied to the facts of that case every vestige of it fades away and leaves no semblance of authority for their position.

III.     There is no race between the creditors mentioned in the suit pending in the circuit court of St.

Louis county and those named in the case instituted in the circuit court of the city of St. Louis for the possession of the property in question.   The receiver of whichever court is adjudged to be the rightful one will hold and administer the assets of the company for the benefit of all its creditors alike.   This is academic in its nature, and it, therefore, needs no citation of authorities in support of it.

If the condition of things that exists in this matter is permitted or tolerated there would be an inevitable conflict between the two courts and the officers of each in the service and execution of their respective orders and processes.   This would not only interfere with the orderly and speedy administration of the  law,  but might lead to physical conflicts between those officers in their efforts to obey those orders and judgments. The result would lead to confusion, chaos and anarchy within the very temples of justice, and sanctioned by the highest tribunal of the State.   Such a condition should not be tolerated.

We are, therefore, clearly of the opinion that the circuit court of the city of St. Louis has no jurisdiction in the premises, and that the peremptory writ of prohibition should issue against that court prohibiting it from proceeding further in the cause.   It is so ordered.

All concur.